IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL RINALDI,** | : |
| **Plaintiff** | : CIVIL NO. 1:13-CV-00450 |
| v. | : (Judge Rambo) |
| **UNITED STATES OF AMERICA,** *et al.*, | : |
| **Defendants** | : |

# **M E M O R A N D U M**

Plaintiff Michael Rinaldi initiated this civil rights action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), by filing a complaint against numerous officers and staff at the United States Penitentiary, Lewisburg ("USP-Lewisburg"), the facility where he was formerly confined. (Doc. 1.) In the complaint, Plaintiff alleged several civil rights violations involving his confinement with a hostile cell mate, Defendants' refusal to allow him to practice his religion, and USP-Lewisburg's policy regarding psychiatric treatment. (*Id.* at p. 5.) By memorandum and order dated May 7, 2015, this court granted summary judgment in favor of Defendants on some of Plaintiff's claims and dismissed Plaintiff's remaining claims. (Docs. 42 & 43.) Presently before the court is Plaintiff's motion for reconsideration of that order.

1

(Doc. 45.) For the reasons stated below, the motion will be denied. Because Plaintiff's factual allegations were discussed at length in this court's previous memorandum, they will be omitted here. (*See* Doc. 42.)

## I. Legal Standard—Motion for Reconsideration

"The purpose of a motion for reconsideration[1] is to correct manifest errors of law or fact or present newly discovered evidence." *Hernandez v. United States*, 608 F. App'x 105, 109 (3d Cir. 2015) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). Such a motion may be granted based on one of three grounds: (1) "an intervening change in controlling law;" (2) "the availability of new evidence;" or (3) "the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). As such, a party may not rely on evidence that has already been submitted to support a motion for reconsideration. *Harsco*, 779 F.2d at 909. A motion for

---

[1] The Federal Rules of Civil Procedure do not provide for a general "motion for reconsideration." *See Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 n.1 (7th Cir. 2001). A motion before a district court seeking to challenge the merits of a final ruling is properly considered under either Federal Rule of Civil Procedure 59(e) or 60(b), depending on the time of filing. *See Waye v. First Citizen's Nat'l Bank*, 846 F. Supp. 310, 313 (M.D. Pa. 1994), *aff'd*, 31 F.3d 1175 (3d Cir. 1994); *Anderson v. Holy See*, 934 F. Supp. 2d 954, 957 (N.D. Ill. 2013). Because Plaintiff filed his motion within 28 days of the entry of this court's order, the motion is properly considered as a Motion to Alter or Amend Judgment under Rule 59(e).

reconsideration is not a vehicle to simply "reargue matters already argued and disposed of." *Waye*, 846 F. Supp. at 313 (citing *Davis v. Lukhard*, 106 F.R.D. 317, 318 (E.D. Va. 1984)).  A party's mere dissatisfaction with a ruling "is not a proper basis for reconsideration." *Velazquez v. UPMC Bedford Mem'l Hosp.*, 338 F. Supp. 2d 609, 611 (W.D. Pa. 2004) (quoting *Burger King Corp. v. New England Hood and Duct Cleaning Co.*, Civ. No. 98-cv-3610, 2000 WL 133756, *2 (E.D. Pa. Feb. 4, 2000)).  Given the importance of finality in legal judgments, motions for reconsideration should be granted sparingly. *Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998).

**II.** **Discussion**

Plaintiff moves this court to reconsider the following holdings from its previous order:

    1) that Plaintiff's claim under the Federal Tort Claims Act ("FTCA") is precluded by the discretionary function exception;

    2) that Plaintiff failed to exhaust his administrative remedies for his claim that he was forced to reside with a hostile cell mate out of retaliation for filing grievances;

    3) that Plaintiff failed to state a claim regarding his allegations of denial of recreation;

    4) that Plaintiff failed to state a claim regarding his allegations of the seizure of his property from his cell;

> 5) that Plaintiff failed to state a claim regarding the rendering of inadequate psychiatric treatment at USP-Lewisburg;
>
> 6) that Defendants were entitled to summary judgment on Plaintiff's First Amendment claim regarding the denial of his ability to observe the Jumuah prayer in congregation with fellow Muslims;
>
> 7) that Plaintiff failed to adequately plead the involvement of the individual defendants regarding his Religious Freedom Restoration Act ("RFRA") claim and his conditions of confinement claim.

(Doc. 46 at pp. 1–9.)  This court will address Plaintiff's arguments for reconsidering each holding in turn.

### A. The Discretionary Function Exception to the FTCA

The FTCA excludes any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The decision of "how best to protect one inmate from the threat of attack by another" is typically considered to be the kind of decision "that the discretionary function exception was designed to shield."  *Donaldson v. United States*, 281 F. App'x 75, 77 (3d Cir. 2008) (quoting *Mitchell v. United States*, 225 F.3d 361, 363 (3d Cir. 2000)).  Plaintiff argues that the decision to house him with an inmate who had previously threatened to kill him was not covered by this exception because the decision was made by Counselor Baysore and, according to a Bureau of Prisons ("BOP") program statement, the Associate Warden is responsible for determining which inmates will be housed together in a Special Management Unit ("SMU").  (Doc. 46 at p. 2.)

Defendants contend that the policy statement in question does not restrict the discretion of USP-Lewisburg officials in such a way as to remove this conduct

from the discretionary function exception, regardless of whether the decision was made by the Associate Warden or another functionary.  (Doc. 49 at pp. 10–11.)  This court agrees.  Program Statement 5217.01 provides that, at each program level of an SMU, the "Associate Warden is responsible for determining which inmates may be housed together." (*Id*. at pp. 7-10.)  That same statement also provides that each institution operating an SMU "will develop an Institutional Supplement that addresses local operations and procedures." (*Id.* at p. 11.)  The supplements in effect at USP-Lewisburg at the time that Plaintiff was housed there provided that "[c]ell assignments will be the responsibility of the Unit Team, with direct oversight provided by the Unit Manager." (*Id.* at pp. 24, 31.)

    The discretionary function exception would not apply to this claim if any of these program statements "specifically prescribes a course of action for an employee to follow" in such a way that "the employee has no rightful option but to adhere to the directive."  *Berkovitz ex rel Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  However, the program statements in question clearly do not prescribe such an explicit course of action, but instead delegate authority to certain officials to make cell assignment decisions.  There is simply nothing in the BOP's program statements that restricts the Associate Warden from delegating his or her assignment power to a Unit Manager (or, indeed, to any other employee).

    Plaintiff contends that USP-Lewisburg's institutional supplement unlawfully conflicts with Program Statement 5217.01 by delegating authority to the Unit Manager instead of the Associate Warden (*see* Doc. 50 at p. 1.), but this contention is without merit.  A more natural reading of the two provisions in question is that, while the Associate Warden may retain primary responsibility for SMU cell assignments, at USP-Lewisburg the day-to-day decisions regarding such assignments are made by Unit Managers.  There is no reason why this kind of

delegation of decision-making to a lower functionary should remove the conduct in question from the discretionary function exception.

Finally, this court emphasizes that the exception covers not only the "exercise or performance" of a discretionary function but also "the *failure* to exercise or perform a discretionary function" and even conduct that goes so far as to constitute the *abuse* of discretion.  28 U.S.C. § 2680(a) (emphasis added).  Thus, for the purpose of the discretionary function exception, the issue of whether Plaintiff's cell assignment was based on improper considerations (such as Counselor Baysore's personal animosity toward Plaintiff), or whether the Associate Warden was negligent in allowing the Unit Manager to make cell assignment decisions, is irrelevant.

Thus, this court finds that Plaintiff has provided no legitimate reason to reconsider its earlier order dismissing Plaintiff's FTCA claim.

### B. Exhaustion of Remedies for Retaliation Claim

This court previously dismissed Plaintiff's claim that he was retaliated against by being forced to reside with a hostile cell mate for failure to exhaust administrative remedies.  (*See* Doc. 42 at pp. 18–20.)  Plaintiff asserted that he exhausted his remedies through administrative grievance numbers 675165 and 684006.  Grievance 675165 was initially filed the day before the event that gave rise to Plaintiff's retaliation claim (being moved in with the cell mate who threatened to kill him).  (*See id.* at p. 18.)  After the grievance was denied, Plaintiff filed an appeal in which he included details about his new housing assignment.  This court determined that, by including a new issue for the first time on appeal, "Plaintiff did not comply with the requirements of the BOP's Administrative Remedy Program and thus did not exhaust his administrative remedies for this claim." (*Id.* at p. 19; *see also* 28 C.F.R. § 542.15(b)(2)).

Plaintiff points out that his appeal was "denied," rather than "rejected," which indicates that it was not refused for filing due to a procedural defect, but was instead denied on the merits. (Doc. 46 at 4.) However, this is beside the point. Even if this court were to accept that the Regional Director effectively waived the requirement to not raise new issues on appeal, Plaintiff's claim was still absent from his initial grievance and thus was not presented to each level of the Administrative Remedy Program, as is necessary to satisfy the exhaustion requirement. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly*.").

Turning to grievance 684006, Plaintiff attempted to file it directly with the Regional Director "pursuant to regulations allowing inmates to file their initial request with the Regional Director when it pertains to a 'sensitive issue.'" (Doc. 42 at p. 19.) However, this claim was rejected, meaning that it was not accepted for filing because of a procedural defect. When a sensitive claim is rejected, the inmate is directed to file the request locally for review by the Warden. 28 C.F.R. § 542.14(d)(1). Plaintiff claimed that he instead appealed the rejection of his claim to the BOP General Counsel's office, though there is no record of this. (Doc. 42 at p. 19.) Because Plaintiff appealed the rejection of his claim rather than refiling it with the Warden, this court held that Plaintiff failed to exhaust his administrative remedies through this grievance. (*Id.* at p. 20.)

Plaintiff argues that when he appealed the rejection of his claim to the General Counsel, the fact that the General Counsel failed to respond constituted a "denial by default." (Doc. 46 at p. 5.) However, as this court explained previously, a denial by default can only occur once a claim has been accepted for filing. (Doc. 42 at p. 20.) Because Plaintiff's grievance was initially rejected, and

never was accepted, the provision for denials by default does not apply. (*Id.*) Plaintiff raises no new arguments on this issue.

Thus, Plaintiff has provided no legitimate reason for this court to reconsider its holding that Plaintiff failed to adequately exhaust his administrative remedies for his retaliation claim.

### C. Failure to State a Claim for Denial of Recreation

This court previously held that Plaintiff failed to state a claim for being denied adequate recreation because the alleged conditions he complained of were not sufficiently severe to constitute a violation of either the Fifth or Eighth Amendments. (Doc. 42 at pp. 27–30.) Plaintiff argues that this court should reconsider this issue because the denial of his recreation was "partly motivated by retaliation" and because BOP Program Statement 5217.01 provides that inmates must be provided with 5 hours of recreation per week and that this can only be restricted by the Warden. (Doc. 46 at p. 5.) However, Plaintiff did not raise a retaliation claim regarding the restriction of his recreation time in his initial complaint, and he cannot amend his complaint through a motion for reconsideration. (*See* Doc. 1.) Furthermore, the BOP's program statements have no bearing on whether the conditions of Plaintiff's confinement violated his rights under the Constitution. *See Sandin v. Conner*, 515 U.S. 472 (1995) (describing the Fifth Amendment's restrictions on inmate discipline); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (describing the Eighth Amendment's restrictions on the conditions of an inmate's confinement).

Thus, Plaintiff has provided no reason for this court to reconsider its holdings that Plaintiff failed to state a claim under the Fifth or Eighth Amendments regarding the alleged denial of adequate recreation.

### D. Failure to State a Claim for Seizure of Property

This court previously held that Plaintiff failed to state a claim regarding the search of his cell and seizure of certain property because the BOP's Administrative Remedy Program satisfied the Fifth Amendment's requirement for an "adequate post-deprivation remedy" (even if the program did not yield satisfactory results). (Doc. 42 at pp. 30–31.) Plaintiff now contends that the seizure of his property nonetheless violated his rights under the Fourth Amendment. First, Plaintiff at no point mentioned the Fourth Amendment as a source of any of his claims, and he may not amend his complaint at this stage. (*See* Doc. 1.) However, even if this court were to entertain this argument, it is well-established that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Plaintiff offers no legal authority to support his assertion otherwise. (*See* Doc. 46 at pp. 5–6.)

Thus, Plaintiff has provided no legitimate reason for this court to reconsider its holding that he failed to state a claim regarding the search of his cell and seizure of his property.

### E. Failure to State a Claim for Inadequate Psychological Treatment

This court previously held that Plaintiff failed to state a claim for his alleged inadequate psychological treatment because he did not allege that this caused any physical injury, and the Prison Litigation Reform Act ("PLRA") stipulates that prisoners may not bring civil rights claims for damages based solely on mental or emotional injuries. (Doc. 42 at pp. 33–34 (citing 42 U.S.C. § 1997e(e)). Plaintiff claims that this provision does not apply to his claim because he is not seeking any monetary compensation for the denial of his psychological treatment, but is instead seeking only declaratory relief. (Doc. 46 at p. 6.) However, any claims

Plaintiff may have had for declaratory and injunctive relief were rendered moot when he was transferred to another institution (prior to the filing of his claim). *See, e.g.*, *Griffin v. Beard*, 401 F. App'x 715, 716–17 (3d Cir. 2010) (holding that claims for declaratory and injunctive relief are moot where prisoner was transferred to another institution and had not shown that he was reasonably likely to be transferred back to previous institution) (citing *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993)).

Thus, Plaintiff has provided no legitimate reason for this court to reconsider its dismissal of his claim for inadequate psychological treatment.

### F.    Summary Judgment for First Amendment Claim

This court previously held that Defendants were entitled to summary judgment on Plaintiff's First Amendment claim that he was denied the ability to observe the Jumuah prayer in congregation with his fellow Muslims. (Doc. 42 at pp. 34–38.) In reaching this decision, this court balanced the factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987), and concluded that the severe concern for safety present in managing inmates in an SMU justified USP-Lewisburg's decision to restrict the congregation of inmates, even those whose sincere religious beliefs may require them to observe Jumuah in congregation. (Doc. 42 at pp. 34–38.) Plaintiff now contends that USP-Lewisburg could have altered its schedule to allow Muslim SMU inmates to take their Friday recreation period during the time they would normally observe Jumuah. (Doc. 46 at pp. 6–7.) Plaintiff asserts that SMU inmates were already allowed to go to the recreation "cages" in groups of six, and that his request was simply for groups of six Muslim SMU inmates to be permitted to take recreation at the Jumuah time in a cage together. (*Id.*)

Defendants respond that his suggested alternative solution "is not cognizant of the many security and programming issues that would be created by permitting Muslim inmates to share the same recreation cells every Friday at USP Lewisburg." (Doc. 49 at p. 16.) This court agrees. Plaintiff's proposed plan is not an alternative policy that would impose a *de minimis* cost on the prison that would satisfy the fourth element of the *Turner* test. (*See* Doc. 42 at pp. 37–38.) Plaintiff asserts that the security risk "would be minimum" because "most violence in the SMU is between different gangs or groups of people." (Doc. 46 at p. 7.) This assumes, seemingly without evidence, that all Muslims in USP-Lewisburg's SMU are a homogenous group that do not cross any other associational boundaries. This court finds this unlikely. More importantly, this argument does not rely on any newly discovered evidence or developments in the law, and does not illustrate that this court's previous decision resulted in a "clear error of law" or "manifest injustice," as is required to succeed on a motion for reconsideration. *See Lazaridis*, 591 F.3d at 669. Rather, this is merely an attempt by Plaintiff to "reargue matters already argued and disposed of" using arguments that could have been made prior to this court's final order. *Waye*, 846 F. Supp. at 313.

Thus, Plaintiff has not provided a legitimate reason for this court to reconsider its decision to grant summary judgment in favor of Defendants on his First Amendment claim.

### G. Failure to Plead the Involvement of Individual Defendants

This court previously dismissed several of Plaintiff's claims because he failed to adequately plead the personal involvement of the individual Defendants. (Doc. 42 at pp. 43–46.) Plaintiff now argues that he did adequately plead their involvement, but was doing so under a theory that the officials in question "established and maintained a policy, practice or custom which caused a

11

constitutional harm," or, alternatively, that certain officials "had knowledge of and acquiesced in the subordinate[s'] unconstitutional conduct." (Doc. 46 at p. 8.)

Defendants contend that Plaintiff did not allege any facts to support such a theory of "supervisory liability." (Doc. 49 at p. 17.) This court agrees. As Defendants state, Plaintiff "merely identified the supervisory defendants based on their roles in responding to administrative remedies and, without specificity, claimed that they failed to properly investigate his administrative remedies." (*Id.* at pp. 17–18.) Furthermore, as this court previously stated, Plaintiff's allegations of conspiracy among the Defendants were both entirely devoid of content and conclusory. (Doc. 42 at p. 43.) Plaintiff offers no arguments to show how the allegations in his complaint described "sufficient factual matter" to show that the defendants in question were personally involved in these matters, and not simply to be faulted for failing to adequately investigate his grievances. Plaintiff certainly offers no arguments to show how this court's previous order involved a "clear error of law" on this matter, nor does he offer any new evidence or point out any new developments in controlling law.

Thus, Plaintiff has offered no legitimate reason for this court to reconsider its previous order dismissing his claims for failure to plead the personal involvement of the individual defendants.

## IV. Conclusion

For the reasons given above, Plaintiff's motion for reconsideration will be denied. An appropriate order will follow.

s/Sylvia H. Rambo<br>United States District Judge

Dated: December 22, 2015.