## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL RINALDI,       :
     Plaintiff       :
                    :      No. 1:13-cv-450
     v.             :
                    :      (Judge Rambo)
UNITED STATES OF    :
AMERICA, *et al.*,      :
     Defendants   :

## <u>MEMORANDUM</u>

## I.    BACKGROUND

*Pro se* Plaintiff Michael Rinaldi ("Rinaldi"), who is currently incarcerated at the Lackawanna County Prison in Scranton, Pennsylvania, initiated this civil action on February 19, 2013 by filing a complaint pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and the Federal Tort Claims Act ("FTCA") against numerous officers and staff at the United States Penitentiary Lewisburg ("USP Lewisburg"), where Rinaldi was previously incarcerated. (Doc. No. 1.) In his complaint, Rinaldi alleged several violations involving his confinement with a hostile cellmate, Defendants' refusal to allow him to practice his religion, and USP Lewisburg's policy regarding psychiatric treatment. (*Id.* at 5.)

Defendants filed a motion to dismiss and/or for summary judgment on May 28, 2013. (Doc. No. 18.) By Memorandum and Order entered on May 7, 2015, the Court

granted the motion as follows: (1) all claims against the United States of America were dismissed with prejudice; (2) Rinaldi's Fifth Amendment claim regarding the theft of his property was dismissed with prejudice; (3) Rinaldi's First Amendment claim regarding the denial of free exercise of religion was dismissed; (4) Rinaldi's First and Eighth Amendment claims regarding being forced to reside with a hostile inmate were dismissed; and (5) all other claims were dismissed without prejudice. (Doc. Nos. 42, 43.) Rinaldi was given leave to file an amended complaint within thirty (30) days with respect to the claims dismissed without prejudice. (*Id.*)

Rinaldi subsequently filed a motion for reconsideration (Doc. No. 45) and a brief in support of his motion (Doc. No. 46). In a Memorandum and Order entered on December 22, 2015, the Court denied Rinaldi's motion. (Doc. Nos. 52, 53.) Rinaldi subsequently filed a notice of appeal. (Doc. No. 54.)

On September 12, 2018, the United States Court of Appeals for the Third Circuit affirmed in part and vacated and remanded in part this Court's dismissal of Rinaldi's complaint. *Rinaldi v. United States*, 904 F.3d 257, 262 (2018). Specifically, the Third Circuit noted that Rinaldi's appeal

> require[d the Court] to resolve three matters of first impression . . . (1) what showing an inmate must make to establish that administrative remedies were not "available" within the meaning of the Prison Litigation Reform Act ("PLRA"); (2) whether the PLRA's exhaustion requirement is satisfied where a prison administrator elects to resolve a procedurally improper administrative request on the merits; and (3)

whether a prison's housing and cellmate assignments meet the discretionary function exception to the [FTCA's] limited waiver of sovereign immunity.

*Id.* The Third Circuit vacated the dismissal of Rinaldi's First Amendment retaliation claim and directed this Court to consider whether Rinaldi was subjectively deterred from exhausting his administrative remedies with respect to that claim. *Id.* at 270. The Third Circuit further concluded that Rinaldi had exhausted his Eighth Amendment failure to protect claim and therefore vacated this Court's dismissal of that claim. *Id.* at 273. Finally, the Third Circuit affirmed this Court's judgment in all other respects, including the dismissal of Rinaldi's FTCA claim. *Id.* at 272-74.

On November 28, 2018, this Court entered an Order, pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), directing Defendants to file a supplemental brief, within twenty-one (21) days, "address[ing] the remanded issue of whether [Rinaldi] was subjectively deterred from lodging a grievance or pursuing the grievance process that [Rinaldi] failed to exhaust related to his First Amendment retaliation claim and present materials pertinent to the issue." (Doc. No. 60 at 2.) The Court directed Defendants to also include a statement of facts. (*Id.*) Rinaldi was directed to file an opposition brief within twenty-one (21) days from when Defendants filed their materials. (*Id.*) Rinaldi was directed to file a statement of material facts specifically responding to Defendants' statement pursuant to Local Rule 56.1. (*Id.*) The Court

3

stayed "Defendants' pleading or other response to [Rinaldi's] exhausted Eighth Amendment assault claim . . . pending resolution of the First Amendment retaliation administrative remedy exhaustion issue." (*Id.*)

On December 18, 2018, Defendants filed a motion to modify court order and for enlargement of time (Doc. No. 61) and brief in support (Doc. No. 62). Specifically, Defendants asked the Court to modify its Order "to require briefing of the threshold issue of whether a *Bivens* remedy extends to First Amendment retaliation claims by federal inmates based on an intervening change in the law due to the recent Supreme Court decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), and whether defendants are entitled to qualified immunity even if a remedy is appropriate under *Bivens*." (Doc. No. 62 at 2.) In an Order entered on February 6, 2019, Magistrate Judge Carlson directed Defendants to file a single, comprehensive motion for summary judgment, brief, and statement of facts on or before March 6, 2019. (Doc. No. 64.)

After receiving a brief extension of time, Defendants filed their motion for summary judgment (Doc. No. 68), motion to exceed page limitation (Doc. No. 69), briefs in support of both motions (Doc. Nos. 70, 72), and statement of facts (Doc. No. 71) on March 11, 2019. On March 12, 2019, Magistrate Judge Carlson granted Defendants' motion to exceed the page limitations. (Doc. No. 73). Rinaldi filed a brief in opposition on March 21, 2019 (Doc. No. 74), and Defendants filed a reply brief on

April 4, 2019 (Doc. No. 75).  Accordingly, the motion for summary judgment is ripe for resolution.

## II.    STANDARD OF REVIEW

Defendants have filed a motion to dismiss and/or, in the alternative, motion for summary judgment.  (Doc. No. 68.)  Defendants assert that Rinaldi's remaining claims are subject to dismissal because *Bivens* does not extend to such claims.  (Doc. No. 72 at 20-40.)  Alternatively, Defendants move for summary judgment on the basis that they are entitled to qualified immunity and that Rinaldi failed to exhaust his administrative remedies with respect to his retaliation claim.  (*Id.* at 40-58.)

### A.    Motion to Dismiss

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading."  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d

Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

**B.      Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The United States Court of Appeals for the Third Circuit has held that filing a motion to dismiss, or in the alternative, a motion for summary judgment is sufficient "to place the parties on notice that summary judgment might be entered." *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996).[1]

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963

---

[1] Both parties have been given a reasonable opportunity to present material relevant the converted motion. (See Doc. No. 60) (November 28, 2018 Order advising parties that the Court will consider the exhaustion issues in the context of summary judgment, and that Rinaldi must oppose the motion as required by M.D. Pa. L.R. 56.1).

F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*,

826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III. STATEMENT OF MATERIAL FACTS[2]

The Bureau of Prisons ("BOP") "has established administrative remedy procedures to allow inmates to seek formal review of any issue relating to any aspect of [their] confinement." (Doc. No. 71 ¶ 4.) First, an inmate is to present the complaint to staff to attempt an informal resolution. (*Id.* ¶ 5.) If informal resolution is not successful, the inmate "may then submit a formal administrative remedy request to the warden where he is confined using the BP-9 form within twenty days following the date on which the basis for the request occurred." (*Id.* ¶ 6.) If an

[2] Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.* Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. No. 71.) Rinaldi has failed to file a response to Defendants' corrected statement of material facts in compliance with M.D. Pa. L.R. 56.1. Moreover, while Rinaldi's verified amended complaint may be treated as an affidavit in opposition to a motion for summary judgment, *see Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003) (noting that "the complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)"); *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion); *see also Boomer v. Lewis*, No. 06-850, 2009 WL 2900778, at *2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge."), this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." *Hammonds v. Collins*, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing *Brooks v. Am. Broad. Co.*, 999 F.2d 167, 172 (6th Cir. 1993)). Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to be undisputed. *See* M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

inmate receives a unsatisfactory response from the warden, he may appeal to the Regional Director, using the BP-10 form, within twenty (20) days of the warden's response. (*Id.* ¶ 7.) Finally, an inmate may appeal the Regional Director's response to the BOP's Central Office, using the BP-11 form, within thirty (30) days of the Regional Director's response. (*Id.* ¶ 8.) The Central Office appeal is the final appeal, and no appeal is fully exhausted until it is denied by the Central Office. (*Id.* ¶¶ 9, 11.) Moreover, at any level, the coordinator "may reject and return to the inmate without a response, an administrative remedy request or appeal that does not meet any requirements stated in BOP regulations." (*Id.* ¶ 12.) If a submission is rejected, the inmate must receive a written notice stating the reason for the rejection. (*Id.* ¶ 13.) If the defect is correctible, "the notice shall inform the inmate of a reasonable time extension within which to correct the defect." (*Id.*)

BOP regulations do provide an exception to the initial filing at the institutional level. (*Id.* ¶ 14.) This exception is to be used by an inmate who "believe[s] filing an administrative remedy at the institution will place [him] in danger." (*Id.*) Under this exception, the inmate may submit the request directly to the appropriate Regional Director. (*Id.*) The inmate must clearly mark "Sensitive" on the request and explain in writing the reason for not submitting it at the institution. (*Id.*) If the regional coordinator agrees that the request is sensitive, it will be accepted. (*Id.*)

Otherwise, the request will not be accepted, and the inmate is advised of that decision in writing. (*Id.*) The inmate may then pursue the matter by submitting a request to the warden. (*Id.*)

Rinaldi was incarcerated at USP Lewisburg from November 21, 2011 through November 7, 2012. (*Id.* ¶ 1.) In January of 2012, Counselor Baysore threatened to retaliate against him by placing him with an assaultive inmate if he continued to file administrative remedies. (*Id.* ¶ 2.) Rinaldi reported the threat to Case Manager Kissell, "who refused to become involved because it was 'over his head' and 'they were tired of Rinaldi filing administrative remedies.'" (*Id.* ¶ 3.)

On January 29, 2012, Defendant Baysore provided Rinaldi a BP-8 informal resolution form. (*Id.* ¶ 16.) Rinaldi returned it to Defendant Baysore that same day, complaining that he had been assaulted by a previous cellmate, "causing him to lose a tooth, to require stitches in his lip and chin, and to suffer from a case of paranoia." (*Id.*) He requested that USP Lewisburg stop the practice of forced double celling. (*Id.* ¶ 17.) On February 1, 2012, Defendant Baysore returned his response, denying Rinaldi's request that the practice of double celling be stopped. (*Id.* ¶ 18.) This response was also provided to Unit Manager Adami, to whom Rinaldi was assigned from November 21, 2011 through February 2, 2012. (*Id.* ¶ 19.)

13

On February 2, 2012, Officer Gee told Rinaldi that he was being moved to D-Block "because he didn't listen when counselor Baysore told him to stop filing administrative remedies." (*Id.* ¶ 21 (citing Doc. No. 1 ¶ 27).) According to Rinaldi, for three weeks after his move, he and "his cellmate engaged in a number of altercations. As a result Rinaldi suffered cuts and bruises and emotional distress." (Doc. No. 1 ¶ 29.)

Rinaldi was assigned to Unit Manager Knox from February 2, 2012 until November 7, 2012. (Doc. No. 71 ¶ 22.) During that time, M. Edinger served as Rinaldi's counselor, and C. Berkoski served as his case manager. (*Id.* ¶¶ 23-24.) Inmates have access to both counselors and case managers several times per week. (*Id.* ¶ 27.) While counselors are in the unit, inmates can request administrative remedy forms. (*Id.* ¶ 28.) Inmates can return completed remedy forms to any unit team member. (*Id.* ¶ 29.) Unit Managers Adami and Knox "generally made rounds through the units under their supervision at least once a week." (*Id.* ¶ 31.) Rinaldi never told either of them, either before or after his move to D-Block, that he was being denied his administrative remedies. (*Id.* ¶ 32.) Moreover, they would have provided remedy forms if Rinaldi had requested them. (*Id.*) Likewise, Edinger and Berkoski would have provided Rinaldi with remedy forms had he requested them.

(*Id.* ¶¶ 33-37.)  Moreover, Rinaldi never told Berkoski that he was being denied administrative remedies.  (*Id.* ¶ 37.)

On February 5, 2012, Rinaldi submitted administrative remedy 675165-F1, in which he complained about double celling practices at USP Lewisburg, to the institution.  (*Id.* ¶ 39.)  The Warden denied this remedy on February 14, 2012, and informed Rinaldi that "if he had a specific safety concern, he should bring it to the attention of staff and noting that his unit team would take many factors into consideration before assigning him a cellmate."  (*Id.* ¶ 40.)

On February 21, 2012, Rinaldi filed regional administrative remedy appeal 675165-R1 with the BOP's Northeast Regional Office.  (*Id.* ¶ 41.)  In it, Rinaldi again complained about double celling practices and stated that he had complained about being assaulted by a previous cellmate.  (*Id.*)  The Regional Director denied his appeal on March 23, 2012, "noting 'there is no record of you being assaulted by your previous or your current cellmate' and instructing Rinaldi to address further safety concerns to the Special Investigative Supervisor's office."  (*Id.* ¶ 42.)  On April 4, 2012, Rinaldi submitted central office administrative remedy appeal 675165-R1 to the Central Office, again complaining about the double celling.  (*Id.* ¶ 43.)  The Central Office denied his appeal on April 13, 2012.  (*Id.* ¶ 44.)

Meanwhile, on March 16, 2012, Rinaldi had submitted administrative remedy 684006-R1 to the Regional Office to complain about an alleged threat by staff. (*Id.* ¶ 45.) Rinaldi claimed that he filed this remedy as sensitive pursuant to the exception set forth above. (*Id.* ¶ 46.) The Regional Office rejected it on April 12, 2012, "with Rejection Code 'INS' and instructed Rinaldi, 'You must first file a BP-9 request through the institution for the warden's review and response before filing an appeal [at] this level.'" (*Id.* ¶ 47.) The BOP's computerized record of Rinaldi's administrative remedy submissions indicates that "he never submitted an administrative remedy at the institution (BP-9) concerning his complaint of retaliation by a staff member and never successfully submitted an appeal concerning the rejection of Administrative Remedy 684006-R1 at the Central Office." (*Id.* ¶ 49.)[3]

The BOP's computerized record indicates that Rinaldi completed the administrative remedy process for seven (7) grievances while incarcerated at USP Lewisburg. (*Id.* ¶ 50.) These grievances included: (1) a request seeking Jumah prayer in congregation; (2) a complaint about the denial of recreation; (3) a complaint about not receiving psychology reviews in the Special Management Unit;

---

[3] In his brief in opposition to Defendants' initial dispositive motion, Rinaldi had claimed that 'he mailed an appeal [of] the rejection of Administrative Remedy 684006-R1 to the Central Office on April 18, 2012, but received no response, and thus deemed his complaint concerning retaliation by a staff member to be exhausted." (Doc. No. 71 ¶ 48.)

(4) a complaint about the temperature in the unit; (5) a complaint about not receiving sanitation supplies; (6) a complaint about a search of his cell and a request for a confiscation sheet; and (7) a complaint of overcrowding and a request for placement in a Residential Re-entry Center. (*Id.*) From July 22, 2012 through December 13, 2012, Rinaldi completed the administrative remedy process "concerning a complaint of a vast conspiracy to cover up abuses at USP Lewisburg because responding officials arbitrarily denied his administrative remedies without investigation (Administrative Remedies 699129-F1, 699129-R1, 699129-A1)." (*Id.* ¶ 51.) However, "[t]he documentation for Administrative Remedy 699129 contains no complaints of staff member retaliation because [Rinaldi] filed administrative remedies." (*Id.* ¶ 52.)

## IV. DISCUSSION

### A. First Amendment Retaliation Claim

In support of their motion to dismiss and/or, in the alternative, motion for summary judgment, Defendants first assert that Rinaldi's First Amendment retaliation claim is subject to dismissal because a *Bivens* remedy does not extend to such claims. (Doc. No. 72 at 20-27.) They also assert that, if the Court concludes that a <u>Bivens</u> remedy is available to Rinaldi, summary judgment is appropriate because they are entitled to summary judgment and because Rinaldi failed to exhaust

his administrative remedies.  (*Id.* at 40-45, 39-59.)  The Court will therefore first consider whether a *Bivens* remedy is even available to Rinaldi.  For the reasons discussed below, the Court concludes that it is not.

### 1.      Rinaldi Is Not Entitled to a *Bivens* Remedy for His First Amendment Retaliation Claim

In 1971, the Supreme Court concluded that, even absent statutory authorization, it would enforce a damages remedy allowing individuals to be compensated after experiencing violations of the prohibition against unreasonable searches and seizures contained in the Fourth Amendment.  *Bivens*, 403 U.S. at 397.  Subsequently, the Court extended the *Bivens* cause of action in two cases involving constitutional violations.  First, in *Davis v. Passman*, 442 U.S. 228, 249-49 (1979), the Court concluded that the Fifth Amendment's Due Process Clause provide a damages remedy to an administrative assistant claiming that a Congressman had discriminated against her on the basis of gender.  Next, the Court concluded that the Eighth Amendment's prohibition on cruel and unusual punishment provided a prisoner a cause of action for damages against prison officials who failed to treat his asthma.  *Carlson v. Green*, 446 U.S. 14, 19 (1980).  "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).

The Supreme Court has "never held that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). For many years, courts, including the Supreme Court, assumed that *Bivens* extended to First Amendment claims. *See Wood v. Moss*, 572 U.S. 744, 757 (2014) ("[W]e have several times assumed without deciding that *Bivens* extends to First Amendment claims."). Moreover, the Third Circuit has, on many occasions, held that plaintiffs could seek redress for First Amendment violations by bringing a *Bivens* suit. *See, e.g.*, *Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981) (concluding that *Bivens* would allow a cause of action alleging denial of a prisoner's right to access the courts); *Paton v. La Prade*, 524 F.2d 862, 870 (3d Cir. 1975) (concluding that a high school student who mailed an envelope to the Socialist Workers Party and had her name and address recorded by the FBI could bring suit under *Bivens* for free speech violations); *cf. George v. Rehiel*, 738 F.3d 562, 585 n.24 (3d Cir. 2013) (assuming without deciding that a *Bivens* action could be brought alleging a First Amendment right to be free from government retaliation for speech).

However, recently, in *Ziglar*, the Supreme Court noted that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857. As the Court stated in *Ziglar*:

> If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without

> endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859-60. If the case presents a new context, a court must then consider whether any alternative remedies exist. *Id.* Even absent alternative remedies, a court must also consider whether special factors counsel against extending the *Bivens* remedy. *Id.*

As Magistrate Judge Carlson recently noted, the Third Circuit has extended *Ziglar*'s "analysis to First Amendment retaliation claims arising in an institutional security and safety context, and has held that after *Ziglar* courts should not imply the existence of such claims under *Bivens*." *Randolph v. FCI Allenwood*, No. 1:17-CV-786, 2018 WL 2276246, at *10 (M.D. Pa. Apr. 24, 2018), *Report and Recommendation adopted by* 2018 WL 2263733 (M.D. Pa. May 17, 2018). Thus, the Third Circuit recently refused to extend *Bivens* to a First Amendment retaliation claim brought against an agent of the Transportation Safety Administration. *Vanderklok v. United States*, 868 F.3d 189, 199 (3d Cir. 2017). The Third Circuit

stated that "the existence of a *Bivens* action for First Amendment retaliation is no longer something that we should assume without deciding." *Id.*

Subsequently, the United States District Court for the District of New Jersey applied *Vanderklok* to a First Amendment retaliation claim brought against a federal prison workplace supervisor. *See Alexander v. Ortiz*, No. 15-6981 (JBS-AMD), 2018 WL 1399302 (D.N.J. Mar. 20, 2018). The plaintiff, a former federal prisoner, filed suit against his supervisor for racial discrimination and retaliation. *Id.* at *1. The court concluded that the case presented a new *Bivens* context and that there were no alternative remedies available. *Id.* at *5-6. However, the court concluded that special factors counseled against extending *Bivens*, noting that "the prison workplace context is a special factor precluding extending the *Bivens* remedy." *Id.* at *7. Likewise, other courts have refused to extend *Bivens* to First Amendment retaliation claims in the prison context after *Vanderklok*. *See, e.g.*, *Keller v. Walton*, No. 3:16-cv-00565-JPG-GCS, 2019 WL 1513498, at *1-3 (S.D. Ill. Apr. 8, 2019) (denying prisoner plaintiff's motion for reconsideration on the basis that *Bivens* does not extend to First Amendment retaliation claims); *Pinkney v. Lockett*, No. 5:16-cv-00103-Oc-02PRL, 2019 WL 1254851, at *5-7 (M.D. Fla. Mar. 19, 2019) (declining to extend *Bivens* to a First Amendment retaliation claim brought by a federal inmate against various prison officials); *Gonzalez v. Bendt*, No. 4:16-CV-04038-KES, 2018

WL 1524752, at *4 (D.S.D. Mar. 28, 2018) (declining to extend *Bivens* to a First Amendment retaliation claim brought by an inmate against a federal employee); *Randolph*, 2018 WL 2276246, at *11 (declining to extend *Bivens* to a First Amendment retaliation claim brought by a plaintiff, who had attempted to visit her fiancé in federal prison, against a federal employee).

Furthermore, after *Vanderklok*, the Third Circuit affirmed the dismissal of a First Amendment retaliation claim brought by a federal prisoner against correctional staff. *See Watlington on behalf of FCI Schuylkill African Am. Inmates v. Reigel*, 723 F. App'x 137, 139-40 (3d Cir. 2018) (per curiam). Specifically, the Third Circuit observed, in part, that "a First Amendment retaliation claim . . . may not apply to a *Bivens* claim against a federal official." *Id.* at 140 n.3 (citing *Vanderklok*, 868 F.3d at 199; *Reichle*, 566 U.S. at 663 n.4).

Guided by the cases noted above, the Court concludes that extending *Bivens* to Rinaldi's First Amendment retaliation claim would be contrary to law. As Magistrate Judge Carlson noted in *Randolph*, "[e]ven if there was no alternative remedy available to [Rinaldi], taken together [the Court finds] the reasoning in *Ziglar*, *Vanderklok*, *Watlington* and *Alexander* calls for the application of *Vanderklok* to the special factors that should be considered in the prison context and cautions against extending *Bivens* here." *Randolph*, 2018 WL 2276246, at *11.

Accordingly, Rinaldi's First Amendment retaliation claim is subject to dismissal. However, in light of the Third Circuit's directive that the Court consider whether Rinaldi was subjectively deterred from exhausting his administrative remedies with respect to this claim, *see Rinaldi*, 904 F.3d at 270, the Court turns to that discussion below.

### 2. Rinaldi Did Not Exhaust His Administrative Remedies with Respect to his First Amendment Retaliation Claim

Under the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997(e). The exhaustion requirement is mandatory. *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to § 1997e's exhaustion requirement. *Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. *Id.* Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. *See e.g., Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000); *Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x

58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *Warman*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'") (citations omitted).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. *See*

*Ross v. Blake*, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation. *Id.* at 1860.

In *Rinaldi*, the Third Circuit joined other circuits to hold "that administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." *Rinaldi*, 904 F.3d at 267. To defeat a failure-to-exhaust defense based on such threats, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Id.* at 269. Accepting Rinaldi's allegation that his "continued resistance to the grievance process is what led prison authorities to house him with a cellmate they knew

threatened to kill him" as true, the Third Circuit concluded that Rinaldi had met the objective part of the test. *Id.* However, as noted above, the Third Circuit remanded the matter to this Court for consideration of whether Rinaldi was subjectively deterred from exhausting his administrative remedies with respect to his First Amendment retaliation claim. *Id.* at 270.

Failure to exhaust is an affirmative defense that must be pled by the defendant. *Jones v. Bock*, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" *Foster v. Morris*, 208 F. App'x 174, 179 (3d Cir. 2006) (quoting *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (internal quotations omitted)). If "the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *Id.* (quoting *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1582 (3d Cir. 1992) (internal quotations omitted)).

Upon consideration of the record before it, the Court concludes that Rinaldi was not subjectively deterred from filing a grievance concerning his claim that Defendant Baysore retaliated against him for filing administrative grievances.

Rather, the record reflects that from November 21, 2011 through February 2, 2012, Rinaldi was assigned to Unit Manager Adami. (Doc. No. 71 ¶ 19.) Rinaldi alleges that Defendant Baysore threatened to retaliate against him in January of 2012. (*Id.* ¶ 2 (citing Doc. No. 1. ¶¶ 24-25).) However, nothing in the record reflects that Rinaldi made Unit Manager Adami aware of the alleged threat or that Adami threatened to retaliate against him due to his use of the administrative remedy procedure.

Moreover, the record reflects that Rinaldi was moved to D-Block on February 2, 2012. (*Id.* ¶ 21.) This move resulted in Rinaldi no longer being assigned to Defendant Baysore and Unit Manager Adami. Rather, he was assigned to Case Manager Knox from February 2, 2012 until November 7, 2012 (*id.* ¶ 22), and to counselor Edinger and Case Manager Berkoski from February 3, 2012 until November 7, 2012 (*id.* ¶¶ 23-24). Nothing in the record establishes that these individuals ever threatened to retaliate against Rinaldi for his use of the administrative remedy procedure or acted in a way to deter him from submitting administrative remedies.

In his brief in opposition, Rinaldi asserts that it is "[his] position that he filed [a] remedy as a sensitive issue at the regional level and when it was rejected he refiled it at the central office level as sensitive." (Doc. No. 74 at 2.) He contends

that he "did not file at the institution level because he did not want to be further retaliated against by Counselor Baysore or others." (*Id.*) The record, however, reflects that Rinaldi's administrative remedy submission that was marked sensitive was rejected by the Regional Office on April 12, 2012 (Doc. No. 71 ¶ 47), and that he never successfully submitted an appeal of this decision to the Central Office (*id.* ¶ 49). Moreover, as discussed above, nothing in the record suggests that Unit Managers Adami and Knox, counselor Edinger, and Case Manager Berkoski ever threatened to retaliate against Rinaldi for his use of the administrative remedy procedure or acted to deter his submission of such remedies.

As the Third Circuit noted in *Rinaldi*, "the 'ability to take advantage of administrative grievances is not an 'either-or' proposition. Sometimes grievances are clearly available; sometimes they are not; and sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics.'" *Rinaldi*, 904 F.3d at 269-70 (quoting *Kaba v. Stepp*, 458 F.3d 678, 685 (7th Cir. 2006)). Thus, it may be "unrealistic to expect [the inmate] to file a grievance about the very people who were threatening retaliation and preventing him from obtaining the proper forms." *Kaba*, 458 F.3d at 685-86. The Third Circuit therefore concluded that the Government's observation that Rinaldi had been "willing[] to file grievances concerning unrelated and far less inflammatory subjects

like cleaning supplies is hardly dispositive of whether he was subjectively deterred from pursuing his Retaliation Request at the Institution." *Rinaldi*, 904 F.3d at 270. Moreover, the Third Circuit noted, "the Government has not identified any subsequent grievance that can be characterized as substantially similar to his Retaliation Request." *Id.*

Upon remand, however, the Government has done just that. On March 28, 2012, Rinaldi filed Administrative Remedy 681745-F1 at the institutional level, raising a grievance of "recreation denial and a staff complaint." (Doc. No. 71 ¶ 38(d).) While the record does not indicate what Rinaldi's specific staff complaint was, the filing of this administrative remedy indicates that Rinaldi was able to submit grievances about staff members at USP Lewisburg while he was incarcerated there. Moreover, from July 22, 2012 until December 13, 2012, Rinaldi completed the administrative remedy process "concerning a complaint of a vast conspiracy to cover up abuses at USP Lewisburg because responding officials arbitrarily denied his administrative remedies without investigation." (Doc. No. 71 ¶ 51.) Rinaldi's willingness, while incarcerated at USP Lewisburg, to file administrative remedies in which he alleged that officials at USP Lewisburg had conspired to cover up abuses and were not investigating his grievances, simply cuts against Rinaldi's argument

that he was deterred from filing administrative remedies concerning retaliatory threats made by staff in a housing unit to which he was no longer assigned.

Consequently, the undisputed record reflects that Rinaldi was not subjectively deterred from pursuing an administrative remedy regarding his retaliation claim. Moreover, other than his unsupported assertion that he did not submit a remedy because he did not want to be retaliated against, Rinaldi fails to submit any evidence to support a conclusion that he was subjectively deterred, thereby failing to cross the threshold of the "more than a mere scintilla of evidence" standard needed to defeat a motion for summary judgment. *See Hall v. Hogan*, No. 3:cv-03-2407, 2005 WL 1653248, at \*4 (M.D. Pa. July 5, 2005). This Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." *Hammonds*, 2016 WL 1621986, at \*3 (citing *Brooks*, 999 F.2d at 172). Accordingly, because the record does not establish that Rinaldi was subjectively deterred, he cannot overcome Defendants' failure to exhaust defense. Therefore, summary judgment will be granted to Defendants with respect to Rinaldi's First Amendment retaliation claim.[4]

---

[4] Given the conclusion that Rinaldi failed to exhaust his administrative remedies with respect to his retaliation claim, the Court declines to consider Defendants' argument that they are entitled to qualified immunity for this claim.

**B.**     **Eighth Amendment Failure to Protect Claim**

The Third Circuit concluded that Rinaldi's Eighth Amendment failure to protect claim was properly exhausted. *Rinaldi*, 904 F.3d at 272. On remand, Defendants first argue that the Court should not extend the *Bivens* remedy to Rinaldi's Eighth Amendment claim. (Doc. No. 72 at 27-40.) Alternatively, Defendants assert that they are entitled to qualified immunity for this claim. (*Id.* at 40-43, 45-49.) The Court considers each argument in turn.

**1.**     ***Bivens* Extends to Eighth Amendment Failure to Protect Claims**

Defendants assert that *Bivens* should not extend to Rinaldi's Eighth Amendment claim because the context of his claim is new. (Doc. No. 72 at 27.) They contend that the Third Circuit's recent opinion in *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018), does not counsel a different result. Defendants state that, unlike in *Bistrian*, they did not "affirmatively recruit Rinaldi into participating in an inherently hazardous surveillance operation—a scheme which objectively placed the plaintiff in *Bistrian* in peril." (Doc. No. 72 at 28.) Conversely, Defendants argue, Rinaldi only alleges that the inmate with whom he was placed "was *generally* known for assaulting his cellmates." (*Id.*) As discussed below, the Court does not agree.

In *Bistrian*, the Third Circuit considered whether Bistrian, a pretrial detainee during all relevant times, could bring a Fifth Amendment[5] failure to protect claim pursuant to *Bivens*. *Bistrian*, 912 F.3d at 90. In holding that Bistrian could bring such a claim under *Bivens*, the Third Circuit noted that the Supreme Court's decision in *Farmer v. Brennan*, 511 U.S. 825 (1994), was "of greatest significance." *Bistrian*, 912 F.3d at 90. In *Farmer*, "the Court assessed a 'failure to protect' claim brought under the Eighth Amendment and *Bivens* as a result of prisoner-on-prisoner violence." *Id.* (citing *Farmer*, 511 U.S. at 829-34). The Third Circuit recognized that *Farmer* Court did not "explicitly state that it was recognizing a *Bivens* claim," but that it "not only vacated the grant of summary judgment in favor of the prison officials but also discussed at length 'deliberate indifference' as the legal standard to assess a *Bivens* claim, the standard by which all subsequent prisoner safety claims have been assessed." *Id.* (citing *Farmer*, 511 U.S. at 832-49). The panel noted that "[t]he prisoner-on-prisoner violence is not a new context for *Bivens* claims," *id.* at 88, and declined to conclude that the fact that the Court did not cite *Farmer* in *Ziglar* meant that *Farmer* had been overruled by implication, *id.* at 91 (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)).

---

[5] "Pretrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause." *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993). Thus, the Fifth Amendment protects pretrial detainees. *Id.*

As noted above, Defendants assert that the context of Rinaldi's failure to protect claim is new, as it involves an allegation that the inmate with whom he was placed was generally known for assaulting his cellmates. In this regard, however, the Court finds the District of New Jersey's recent decision in *Doty v. Hollingsworth*, No. 15-3016 (NLH), 2018 WL 1509082 (D.N.J. Mar. 27, 2018), to be instructive. In *Doty*, a federal inmate at FCI Fort Dix brought an Eighth Amendment failure to protect claim against various prison officials there, alleging that during his incarceration there, he was assaulted by another inmate who "had a known propensity for assaulting other inmates and entering other housing units." *Id.* at *1. The court denied the defendants' motion to dismiss the Eighth Amendment claim, "cit[ing] at length the standard for a failure to protect claim arising in the context of a *Bivens* suit, which was laid out by the Supreme Court in *Farmer v. Brennan*." *Id.* at *2.

Subsequently, the defendants in *Doty* moved for reconsideration, citing the Supreme Court's opinion in *Ziglar* and arguing that the court should decline to extend *Bivens* to the plaintiff's Eighth Amendment claim. *Id.* The court granted the motion for reconsideration to the extent that it considered the plaintiff's claim in the context of *Ziglar*, but "after consideration of *Ziglar* and upon reconsideration of the

Motion to Dismiss," denied the motion to dismiss again as to the Eighth Amendment claim. *Id.* at *4. In doing so, the court stated:

> Plaintiff's Eighth Amendment failure to protect claim against the Moving Defendants is not a "new context" of *Bivens* liability. In *Ziglar*, the Supreme Court specifically identified a claim arising under the Eighth Amendment's Cruel and Unusual Punishment clause as one of the contexts it has recognized as providing an implied damages remedy under *Bivens*. *See Ziglar*, 137 S. Ct. at 1855 (citing *Carlson*). The claim in *Carlson* involved deliberate indifference to a prisoner's medical needs, and the claim here involves deliberate indifference to a prisoner's safety, both of which use the same sort of deliberate indifference analysis and both of which arise under the Eighth Amendment's Cruel and Unusual Punishment Clause. *Compare Estelle v. Gamble*, 429 U.S. 94, 104 (1976), *cited by Carlson*, 446 U.S. at 17, *with Farmer*, 511 U.S. at 835 (citing *Estelle*, 429 U.S. at 104). The Supreme Court itself outlined the application of the deliberate indifference standard to failure to protect claims in *Farmer v. Brennan*, 511 U.S. 825 (1994), a case in which a federal prisoner brought a *Bivens* suit against federal employees including the warden. The claim is thus not different in a meaningful way from *Carlson* and *Farmer*. Notably, in *Carlson*, the Supreme Court stated, "we have here no explicit congressional declaration that persons injured by federal officers' violations of the Eighth Amendment may not recover money damages from the agents but must be remitted to another remedy." 446 U.S. at 19. Nothing in the text of the *Carlson* opinion suggests that the Supreme Court meant to limit its decision only to medical treatment claims arising under the Eighth Amendment.

*Id.* at *3.

Here, Rinaldi alleges that in January of 2012, counselor Baysore threatened to move him "to a different unit and place[ him] in a cell with an inmate who is known for assaulting his cellmates." (Doc. No. 1 ¶ 25.) On February 2, 2015,

35

Rinaldi "was moved to D block and placed in a cell with an inmate who informed the officers that if Rinaldi were placed in the cell he would kill Rinaldi." (*Id.* ¶ 28.) For the following three (3) weeks, Rinaldi and his cellmate "engaged in a number of altercations." (*Id.* ¶ 29.) Given that Defendants seek dismissal of Rinaldi's Eighth Amendment claim on the basis that *Bivens* does not extend to such a claim, the Court must accept as true these allegations for the motion to dismiss. *See Doty*, 2018 WL 1509082, at *4.

Upon consideration of *Farmer*, *Bistrian*, and *Doty*, the Court concludes that Rinaldi's claim is not a "new context" for *Bivens* liability. Thus, Defendants' request to dismiss his claim on that basis will be denied. As noted above, Defendants alternatively move for summary judgment on the basis that they are entitled to qualified immunity for this claim. The Court turns to that discussion below.

### 2. Qualified Immunity Analysis

Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Pearson v. Callahan*, 55 U.S. 223 (2009). This qualified immunity doctrine provides officials performing discretionary functions not only a defense to liability, but also "immunity from suit." *Crouse v.*

*S. Lebanon Twp.*, 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (citations omitted).  The

Supreme Court in *Pearson* provided that qualified immunity:

> [b]alances two important interests – the need to hold public officials
> accountable when they exercise power irresponsibly and the need to
> shield officials from harassment, distraction, and liability when they
> perform their duties reasonably.  The protection of qualified immunity
> applies regardless of whether the government official's error is "a
> mistake of law, a mistake of fact, or a mistake based on mixed questions
> of law and fact."

*Pearson*, 555 U.S. at 231.

Application of qualified immunity implicates two distinct inquiries. The first

evaluates whether the defendant violated a constitutional right.  *Saucier v. Katz*, 533

U.S. 194, 201 (2001), *abrogated in part by Pearson*, 555 U.S. 223; *Curley v.*

*Klem*, 499 F.3d 199, 206 (3d Cir.2007); *Williams v. Bitner*, 455 F.3d 186, 190 (3d

Cir.2006).  If the defendant did not commit a constitutional infraction, the court must

dispose of the claim in the defendant's favor.  *Saucier*, 533 U.S. at 201.  If the

defendant committed a constitutional violation, the second inquiry assesses whether

the right in question was "clearly established" at the time the defendant

acted.  *Pearson,* 555 U.S. at 232; *Saucier*, 533 U.S. at 201 - 02.  A right is "clearly

established" if a reasonable state actor under the circumstances would have known

that his or her conduct impinged upon constitutional mandates.  *Pearson*, 555 U.S.

at 232.  Further, the Third Circuit has stated that "a right is clearly established for

the purposes of qualified immunity when its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008) (quoting *Williams*, 455 F.3d at 191). This standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hubbard*, 538 F.3d at 236 (quoting *Gilles v. Davis*, 427 F.3d 197, 203 (3d Cir. 2005)). The court is not required to conduct the inquiries sequentially, *Pearson*, 555 U.S. at 239-40, and it may eschew difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. *Pearson*, 555 U.S. at 239.

With respect to Rinaldi's claim, it is well settled that the Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). To prevail on a failure to protect claim, an inmate must demonstrate that (1) he is incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials acted with deliberate indifference to his health and safety. *Id.* at 833-345, 847; *see also Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (citing *Farmer*, 511 U.S. at 833-34, 838). A substantial risk of serious harm "may be established by much less than proof of a reign of violence and terror," but requires

more than a single incident or isolated incidents.  *See Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985).  This does not require, however, that an inmate suffer an assault before obtaining relief.  *Id.*  Deliberate indifference requires that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). Finally, the inmate must show that "the official's deliberate indifference caused the harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012).  When assessing this question on summary judgment, all inferences should be drawn in the light most favorable to the non-moving party.  *Barton v. Curtis*, 497 F.3d 331, 334 (3d Cir. 2007).

Defendants Watts, Norwood, Bledsoe, Thomas, Grondolsky, Young, Rear, Doe, and Taggart assert that they are entitled to be granted summary judgment because they "are not alleged to have had any specific involvement in . . . Rinaldi's cell transfer."  (Doc. No. 72 at 47.)  The Court agrees.  Personal liability in a civil

rights action cannot be based on a theory of *respondeat superior*. *See Rizzo v. Goode*, 423 U.S. 362 (1976). Moreover, "[a] defendant in a civil rights action must have personal knowledge in the alleged wrongs . . . . [P]ersonal knowledge can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Here, nothing in the record establishes that Defendants Watts, Norwood, Bledsoe, Thomas, Grondolsky, Young, Rear, Doe, and Taggart had any personal involvement in Rinaldi's cell transfer or knew that he would be housed with an inmate known to assault his cellmates. Accordingly, the Court will grant summary judgment to these individuals on that basis.

Defendants Kissell, Baysore, and Gee also assert that they are entitled to qualified immunity. Defendant Kissell asserts that "there is no allegation that Kissell was aware of Baysore's alleged threat to house Rinaldi with an assaultive inmate." (Doc. No. 72 at 48.) Defendant Kissell further contends that "the law recognizing actions under the Eighth Amendment did not extend to the actions alleged in this case by" him. (*Id.*) The Court does not agree. In his verified complaint, Rinaldi maintains that he reported Defendant Baysore's threat to house him with an assaultive inmate to Defendant Kissell, and that Defendant Kissell responded that "he wasn't going to get involved in what is going on because it is over his head and

they are tired of Rinaldi filing administrative remedies." (Doc. No. 1 ¶ 26.) Moreover, as discussed above, the Court has concluded that *Bivens* extends to Rinaldi's failure to protect claim. Thus, on the record before it, the Court cannot conclude at this time that Defendant Kissell is entitled to qualified immunity on Rinaldi's Eighth Amendment claim. *See Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (noting that "[i]n failure to protect cases, '[a] prisoner normally proves actual knowledge of impending harm by showing that he [or she] complained to prison officials about a specific threat to his [or her] safety.'" (alteration in original) (quoting *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991))).

Defendants Baysore and Gee also argue that they are entitled to qualified immunity because "[n]o reasonable officer in Baysore's or Gee's position would understand that their actions could be subject to a *Bivens*-type remedy given that . . . the law recognizing actions under the Eighth Amendment did not extend to the actions alleged in this case by Baysore and Gee." (Doc. No. 72 at 48-49.) For the same reasons set forth above with respect to Defendant Kissell, the Court cannot agree that Defendants Baysore and Gee are entitled to qualified immunity. Rinaldi's verified complaint maintains that Defendant Baysore threatened to place him in a cell "with an inmate who is known for assaulting his cellmates" (Doc. No. 1 ¶ 25), and that Defendant Gee told Rinaldi that he was moving to D Block, where he was

41

placed with an inmate "who informed the officers that if Rinaldi were placed in the cell he would kill Rinaldi" (*id.* ¶¶ 27-28). Given this record, the Court cannot conclude at this time that Defendants Baysore and Gee are entitled to qualified immunity on Rinaldi's Eighth Amendment claim.[6]

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss and/or, in the alternative, motion for summary judgment (Doc. No. 68) will be granted in part and denied in part. An appropriate Order follows.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: April 16, 2019

---

[6] Although the Court has concluded that Defendants Kissell, Baysore, and Gee are not entitled to qualified immunity at the summary judgment stage, they may still contend that they reasonably, but mistakenly, believed that their actions were justified by the circumstances as they perceived them. *Bennett v. Murphy*, 274 F.3d 133, 137 (3d Cir. 2002). This contention, however, must be addressed at trial. *Id.*